Cotton *v.* State.*

(Division B. June 9, 1924.)

[100 So. 383. No. 24117.]

1. Homicide. *Aggressor resisting eviction by owner of premises not entitled to plead self-defense.*

While ordinarily instructions denying the right of self-defense should not be given, still it is the law that a person has the right to preserve peace on his own premises and may by force, if necessary, evict from his place persons guilty of misbehavior, and a person who is the aggressor and at fault may not resist the right of the owner to evict him, and, if in doing so he kills such owner, he cannot set up the right of self-defense.

2. CRIMINAL LAW. *Misconduct of prosecuting attorney to which ob-*
   *jection sustained and attorney reprimanded held not to warrant*
   *reversal.*
   Where, in the course of examination of a witness for the state, the
   district attorney asks the witness if she did not make a state-
   ment in the witness room contrary to the one made on the trial,
   and she denies making such statement and the district attorney
   replies, "All I have got to say is that you are an infamous liar,"
   and such remark is objected to, the objection sustained by the
   court, and the district attorney reprimanded by the court, such
   remark will not cause a reversal of the case.

   *Headnote 1.  Homicide, 30 C. J., section 216;  2.  Criminal Law, 16
C. J., section 2270.

APPEAL from circuit court of Attala county.

HON. T. L. LAMB, Judge.

John Cotton was convicted of manslaughter, and he
appeals.  Affirmed.

*Jas. T. Crawley,* for appellant.

I.  The instruction given the state fails to correctly
announce the law.  If it is the law, then a man is denied
the right of self-defense under certain circumstances
and under certain conditions.  For instance, if that in-
struction is the law, then a visitor in a man's home may
be attacked by another guest and, although under the
law he has a right to defend himself from the attack of
the other guest, he, under this instruction, has no right
to defend himself from the attack of the owner of the
home.  No matter if he be brutally assaulted, no matter
if he be fighting for his life against a cowardly assassin,
yet under this instruction the owner of the home in which
he may be at the time, can come forth and quell the dis-
turbance and use whatever force is necessary to evict
the man who is attacked, without giving that man the
right to protect himself at the hands of the owner of the
home.

There can be no doubt but that it takes away from John
Cotton his right of self-defense.  Then if it takes away

from Cotton his right of self-defense, then certainly he had no legal right whatsoever to hit Jim Scott, and having hit him, he, under this instruction is bound to be guilty of the crime charged and there was nothing left for the jury to do but to find him guilty.

I respectfully submit that under the statement of facts in this case and under the evidence it was a very close question on the facts as to whether or not this defendant was guilty of any crime. I further submit that without this added instruction the state would not have gotten a conviction.

II. If it be possible that the conduct and the acts of a district attorney can be so grossly improper and can be calculated to be harmful towards the defendant and can be said to be so prejudicial as to keep the defendant from getting a fair and impartial trial, then the conduct of the district attorney in this case will certainly reverse the case at bar.

A negro is being tried for manslaughter. The jury of course is composed of white men. The attorneys of the court, both for the state and for the defendant are white men. The state is putting its case before the jury. The case up to the time that Jane Scott takes the witness stand is very weak indeed. Jane Scott is a daughter of Jim Scott, the deceased. She is called and placed on the stand by the state and testifies.

The district attorney as set forth in the bill of exceptions jumped up and asked her if it was not true that she had told him that the defendant hit her father while he was stopping over to get a stick, and if he had not been told a different statement about the facts in the conference room a minute ago by her and when she denied this, the district attorney, then and there, and in the presence of the jury and during open court said to her, "All I have got to say is that you are an infamous liar." Now under these circumstances what on earth was a poor negro woman to say? Everything in the world she

had said was ruined and her testimony was destroyed. And I want to call the attention of the court to the fact that it was destroyed by an attorney of the state, who, in effect, impeached his own witness and in addition to that impeached his own witness by testifying while not under oath.

All of this was in direct violation of all known rules of procedure. See *Martin* v. *State,* 63 Miss. 505, 56 Am. Rep. 812; *Hampton* v. *State,* 88 Miss. 257, 40 So. 545.

We respectfully submit that this defendant was denied that fair and impartial trial guaranteed by the constitution. Therefore, his case should be reversed and he be given a new trial. Then he may have the opportunity of presenting his defense to the jury without being denied all or any of his rights. And he may be permitted to have the testimony favorable to him presented to the jury without having the district attorney impeach the testimony of his witness by both testifying in the case without being placed under oath and then arguing the case.

*Rush H. Knox,* Attorney-General, for the state.

I. In reply to the argument of learned counsel for the appellant with reference to the special bill of exceptions, we say that the cases cited by him do not in anywise control in this particular instance. The case of *Martin* v. *State,* 63 Miss. 505, is distinguishable. The case of *Harrington* v. *State,* 88 Miss. 257, recites a different occurrence altogether. There the trial judge refused to reprimand or check the district attorney in the course of his argument at all, notwithstanding the fact that counsel for the defendant was protesting at the time against said remark. In the case at bar, we are told that the trial judge did in a way, reprimand the district attorney in the presence of the jury and gave the jury to understand that they should not consider the statements of the district attorney.

II.   The instruction complained of was not error and perhaps under the facts and circumstances of this case, should have been given, but we doubt whether or not it influenced the jury one way or the other.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, John Cotton, was indicted and convicted of manslaughter for the killing of Jim Scott. The killing occurred at the residence of Scott. On the evening of the killing Scott had given a party or candy-pulling, and the appellant and others attended the party. It appears that part of the amusement of the evening was a dance. Cotton and another person got into an altercation over the dance in some way. This person left the premises for the purpose, ostensibly, of securing a weapon; but the quarrel was taken up by a third person, and John Cotton and Homer Cotton and another person engaged in a cursing contest more or less threatening in its verbal appearance at least. The deceased, Scott, according to most of the witnesses, requested them to withdraw from his premises and not to create a disturbance; that if they had a difficulty to leave his premises and settle it. The appellant and his brother refused to obey the request of the deceased to leave the premises. Whereupon the deceased came out and told them that if they would not hush he would make them hush, according to some witnesses using vile epithets toward the appellant and his brother. They refused to leave, and the deceased started to pick up a scantling or piece of paling or picket, when he was struck by the appellant John Cotton and by Homer Cotton; it being doubtful as to which inflicted the blow which resulted in death. There is no dispute that the deceased requested John Cotton and his brother to leave the premises, and that they refused to do so.

The court instructed for the state that—"Under the law a man has a perfect right to quell a disturbance or

difficulty among his guests and to evict from his home and his premises the person or persons guilty thereof, and to use such force as may be necessary to accomplish said purpose."

The court also instructed the jury for the state: "That under the law one who provokes a difficulty and remains the aggressor throughout the same cannot invoke the plea of self-defense."

These instructions are complained of as the defendant claims the right of self-defense.

While ordinarily instructions denying the right to self-defense should not be given, still it is the law that a person has the right to preserve the peace at his own home and to evict from his home and premises persons who are creating disturbances upon his premises. It is unquestionably true, under the evidence in this record, that the appellant and his brother were engaged in quarrels at the residence of the deceased on the night he was killed and were requested to leave the premises, and refused to do so, and when the deceased, who owned the premises, undertook to use force to drive him from his premises, struck and killed him in resisting his right to remove them therefrom.

Under the facts in this record, the appellant had no right to defend himself because he was at fault and in the wrong and was resisting the right of the deceased to quell a disturbance and to remove them from his premises.

It further appears from a special bill of exceptions that a certain witness, a daughter of the deceased, was being examined by the distruct attorney and made some statement which the district attorney contended was at variance with her statement to him in the witness room, and said witness was asked if she did not state in the conference room a minute before, and if it was not true that she had stated there, that the defendant hit the deceased while he was stooping over to pick up a stick, and upon the witness denying such statement, the district attorney

then and there and in the presence of the jury said, "All I have got to say is that you are an infamous liar," to which the defendant objected and the court sustained the objection and reprimanded the district attorney therefor. For this language it is contended the case be reversed.

We think that the court did all he was required to do under the circumstances, and when the court sustained the objection and instructed the jury to disregard it and reprimanded the district attorney for the use of such language, he did all the law required him to do in the premises. If, however, further action was necessary, it devolved upon the defendant to request a mistrial to be entered and a new jury impaneled because he could not, after the court had so ruled, proceed with the trial and take the advantages of a possible acquittal and on motion for a new trial seek to set aside the trial when the verdict had gone against him.

The judgment of the court will be affirmed.

*Affirmed.*